**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**


DENISE L. BROSCH,                          )
                                           )
                     Plaintiff,            )
                                           )          Civil Action
         vs.                               )          No. 10-0357-CV-W-JCE-SSA
                                           )
MICHAEL S. ASTRUE,                         )
Commissioner of Social Security,           )
                                           )
                     Defendant.            )


### **O R D E R**

Plaintiff is appealing the final decision of the Secretary denying her application for

disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq.

and for supplemental security income ["SSI"] benefits under Title XVI of the Act, 42 U.S.C. §

1381 et seq.  Pursuant to 42 U.S.C. §§ 405(g) and  1383(c)(3), this Court may review the final

decisions of the Secretary.  For the following reasons, the Secretary's decision will be reversed.

### Standard of Review

Judicial review of a disability determination is limited to whether there is substantial

evidence in the record as a whole to support the Secretary's decision.  42 U.S.C. § 405(g); e.g.,

Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991).  Substantial evidence is "'such

evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson

v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197,

229 (1938)).  Thus, if it is possible to draw two inconsistent positions from the evidence and one

position represents the Agency's findings, the Court must affirm the decision if it is supported on

the record as a whole.  Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A).  Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990).  In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment.  Id.  Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled.  The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions.  Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).   When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski.  The ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they are inconsistent with the evidence in the record as a whole.  Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

Discussion

Plaintiff was fifty-one years old at the time of the hearing before the ALJ.  She has a high

school education and 106 hours of college credit. Plaintiff has a degree in paramedic science

from a community college, but not an actual associate's degree.   She has past relevant work as a

paramedic, and a dispatcher.  She alleges disability because of mental and physical problems,

including bipolar disorder, headaches, chronic neck and shoulder pain, and Hepatitis B and C.

At the hearing before the ALJ,  plaintiff testified that she was currently working as a

convenience store clerk, and had been doing so for two years.  A friend of a friend hired her with

accommodations to include limited hours of work, a 25-five-pound weight limit because of her

shoulder, and work at night when it wasn't as busy.  She also could sit down whenever she

needed to, and lie down if she needed to.   She was also not penalized for missing work.  She

estimated that she missed work about three times a month, as well as the days when she had to

leave early or arrive late.  She is scheduled to work about 16-24 hours per week. She is allowed

to sit down at work if there are no customers. It was also her testimony that she doesn't mop or

sweep, and doesn't reach for anything over her head.  Her most recent past full-time job was as a

direct care provider for an adult rehab center for the developmentally disabled. She did this for

about five years, and comparable work for about two years before that.  Plaintiff testified that she

was also a paramedic.  When she worked as a dispatcher, plaintiff testified that this was with a

mass ambulance service in Kansas City.  She stated that the dispatching job "is considered a step

above being a paramedic." [Tr. 23].  The job required using two computer screens to direct

ambulances to different locations.  It required that you were a paramedic for two years before

taking the course to be a dispatcher.  She testified that it was very stressful.  She worked mainly

as a dispatcher for 16 of the 22 years that she worked in the paramedic field.

It was plaintiff's testimony that she cannot work because of bipolar and anxiety disorder, cluster headaches, and pain in her neck and shoulders that radiates down her back at times. In regard to the bipolar disorder, she has rapid cycling, which means that she has rapid mood shifts on a day-to-day basis. When she is in a manic stage, she doesn't want to sleep or eat; she makes poor decisions, especially shopping decisions; and she talks too much at work, interfering with her job. She can't finish her thoughts and acts "scatter brained. . . ." [Tr. 17]. When she is in a depressive mood, she is depressed and suicidal. She doesn't eat, does not want to get out of bed, has poor hygiene, and cannot work. This can last from a few days to a month. She's had several hospitalizations for suicidal ideation. She misses work because of both states. She has constant shoulder pain, which can radiate down to her hand. This is worse when she reaches overhead or writes too much, and it causes her to drop things. Regarding her cluster headaches, plaintiff testified that they come on suddenly, and cause her to have to lie down in a dark room, with heat on the back of her neck, and heat rotating with ice on her eyes and forehead. These happen two or three times a month, and cause her to miss work. Plaintiff testified that she also has pain in her hips, going down to her legs. She can usually sit for about 45 minutes to an hour, and she can stand about an hour if she can move around. In terms of her daily activities, plaintiff stated that she lives with her boyfriend, who does the cooking, the majority of the cleaning, most of the laundry, and grocery shopping. She testified that she can't do the shopping because she buys things she doesn't need and which she can't afford, and cannot make up her mind on what to buy. She watches TV and reads, and has a lot of projects she starts when she is manic. Sometimes they get done, and other times, she will start a new project.

4

The ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability, September 8, 2006. He found that plaintiff suffers from hepatitis B and C seropositivity, and chronic sprains and strains. It was the ALJ's finding that plaintiff's "medically determinable mental impairment of bipolar disorder in partial remission does not cause more than minimal limitations in the claimant's ability to perform basic mental work activities and is therefore nonsevere." [Tr. 34]. The ALJ found that plaintiff was not fully credible. He found that she had the Residual Functional Capacity ["RFC"] to perform the full range of light work, and that she could perform her "past relevant work as a dispatcher, convenience store clerk." [Tr. 37]. Therefore, the ALJ found that plaintiff was not under a disability as defined by the Act.

Plaintiff contends that the ALJ erred by improperly finding that she could perform her past relevant work; by arbitrarily determining her RFC; by not finding that the bipolar disorder was a severe impairment at step two of the evaluation process; and by not finding that degenerative disc disease and headaches were severe impairments. She also contends that the ALJ erred in not properly considering the opinion of plaintiff's treating physician and her treating psychiatrist.

At the outset, defendant has conceded that plaintiff's work as a convenience store clerk did not rise to the level of substantial gainful activity and should not have been considered as past relevant work. Therefore, the finding of the ALJ is limited to plaintiff being able to perform the full range of light work, with no restrictions, and being able to perform her past relevant work as a dispatcher.

While a treating physician's opinions are ordinarily to be given substantial weight, they

5

must be supported by medically acceptable clinical or diagnostic data, and must be consistent

with substantial evidence in the record.  Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999);

Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004).  The ALJ may reject the opinion of

any medical expert if it is inconsistent with the medical record as a whole.  See Bentley v.

Shalala, 52 F.3d 784, 787 (8th Cir. 1995).  In Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000),  the

Eighth Circuit Court of Appeals discussed the weight to be given to the opinions of treating

physicians, holding that the opinion of a treating physician is accorded special deference under

the Social Security regulations.  The Court has, however, upheld an ALJ's decision to discount or

even disregard the opinion of a treating physician where other medical assessments "are

supported by better or more thorough medical evidence,"Rogers v. Chater, 118 F.3d 600, 602 (8th

Cir. 1997), or where a treating physician renders inconsistent opinions that undermine the

credibility of such opinions.  Cruze v. Chater, 85 F.3d 1320, 1324-25 (8th Cir. 1996).  In this

case, for the reasons delineated herein, the Court finds that the ALJ erred in not crediting the

opinions of the treating physician and treating psychiatrist in his assessment that her mental and

physical impairments were not severe.

　　Regarding plaintiff's bipolar disorder, the ALJ found that this was not a severe

impairment by considering the four broad functional areas set out in the disability regulations for

evaluating mental disorders, the "paragraph B" criteria. In activities of daily living, the ALJ

found that plaintiff has a mild limitation, in reliance on the state agency psychological examiner.

His finding was that, although plaintiff's functioning was affected by her mental impairment, the

impact was minimal because the condition was largely controlled with medication.  The ALJ

also relied on a third-party function report by plaintiff's mother, which indicated she could care

for her child when he was in her custody, and could generally take care of herself, drive, shop, and go out alone.  In terms of social functioning, he also found that plaintiff has mild limitations.  He noted that the examining psychologist found that her periods of isolation or overspending are brief and do not severely limit her social functioning.  In the area of concentration, persistence and pace, the ALJ found she had mild limitations.  The examiner found that she was able to understand most instructions, and that her attention, concentration and cognitive persistence are intermittently impaired by mania and depression.  The ALJ found, regarding episodes of decompensation, that she had no episodes that were of an extended duration, and that the hospitalization for depression in 2005 was prior to the alleged onset date.  Therefore, the ALJ found that because her medically determinable mental impairment caused no more than mild limitations in the three functional areas and there were no episodes of decompensation of extended duration, her mental impairment was nonsevere.

As argued by plaintiff, the record supports a finding that plaintiff has suffered from episodes of decompensation.  Her most recent hospitalization was a year before the alleged onset date.  At the time she was admitted, she had a Global Assessment of Functioning ["GAF"] of about 30, which was improved to 40 when she was released six days later to an outpatient facility.  It is clear from the record that plaintiff has had other incidents of suicidal ideation and continues to have these feelings, according to her testimony and doctors' treatment notes.  She also recounted a condition of extreme mood swings, even on medication.  While she may be currently stable, there is no reason to conclude, given the nature of the disease and the record as a whole, that her bipolar disorder is not a severe impairment.

Plaintiff's treating psychiatrist, Dr. E. Michael Young, indicated that he had been treating

her for three years. Her gave her current diagnosis as bipolar mood disorder, with a long history

of severe mood symptoms since childhood. He indicated that she had self-medicated with

numerous substances, mainly alcohol; that she has been substance-free for over three years; that

she is compliant with treatment, which has included different medications; and that even with

medication, her mood "continues to be suboptimal." [Tr. 394]. He indicated that she still battles

depression, and that she cannot function in the working world. It was Dr. Young's opinion that

she has been disabled since at least Sept. 8, 2006, and he did not see her showing much

improvement. He assessed her GAF as 40 at best. In his Mental RFC Assessment, Dr. Young

opined that plaintiff was markedly limited in all categories of understanding and memory;

concentration and persistence; social interaction; and adaptation. He indicated that he relied on

regular mental status exams at outpatient appointments to reach these conclusions.

The ALJ gave little weight to the opinion of Dr. Young, the treating psychiatrist, finding

that it was not supported by the record as a whole. The ALJ relied instead on the consulting

examiner, who saw plaintiff once, but who had also relied on the treatment records of Dr.

Young. Additionally, the examiner, Dr. Holzschuh, found that plaintiff suffered from bipolar

disorder, in partial remission with medication. He specifically stated that because of the bipolar

disorder, plaintiff has a "significant functional limitation, being her propensity toward

decompensatory episodes." [Tr. 424]. It was also Dr. Holzschuh's finding that plaintiff's most

recent psychiatric hospitalization, in 2005, was due to mood disturbance and polysubstance

dependence. "She has been able to retain a three year sobriety from substance, [sic] with her

strong relapse potential occurring during hypomania episodes. She is maintained on combined

doses of Lamictal and atypical antipsychotics." [Id.].

Based on her treating psychiatrist's opinion, which was clearly supported by that of the consulting examiner, it cannot be said that plaintiff's bipolar disorder is not a severe impairment, given her past and current history, including a severe episode of decompensation in the year before she alleged the onset of disability. There is substantial evidence in the record to support a finding that plaintiff's risk of decompensation is only held at bay by virtue of medication, that her bipolar disorder is only in partial remission, and that it is a severe mental impairment.

Regarding her physical impairments, for reasons that are not clear from the record, the ALJ found that plaintiff suffered from a severe impairment of " chronic sprains and strains." [Tr. 33]. He then proceeded to conclude that she did not meet the listed impairment for this condition. The ALJ did not address the medical records, including those from plaintiff's treating physician, regarding her degenerative disc disease and headaches. Additionally, he did not refer to x-rays that indicate she suffers from degenerative disc disease in her cervical spine, including stenosis. He also did not credit plaintiff's testimony regarding pain in her shoulder and neck, that sometimes radiates down her back and down into her hand; that she has problems with overhead reaching; and that writing is a problem, as well as gripping. Nor did he credit her testimony regarding the headaches that she has. The record supports a finding that she has suffered from these for years, during which she is light-sensitive, and has had to miss work. Further, in his RFC assessment, ALJ provided for no restrictions regarding reaching or other upper-extremity activity.

According to plaintiff's treating physician, Dr, Steve Buie, she suffers from severe problems of the cervical spine. He found that she suffered from mild degenerative disc disease and severe cervical stenosis. [Tr. 470]. The x-rays from 2008 showed severe narrowing of the

left C3-C4 neural foramina, narrowing of C4-C5 neural foramina with degenerative discs at C4-C5, C5-C6, C6-C7, with severe left C4-C5 bilaterally and C4-C5 neural foraminal stenosis. He has related her headaches to her cervical spine disease. Dr. Buie indicated, in a letter dated January 23, 2009, that plaintiff had been a patient at the Hickman Mills Clinic since 1997. He stated that she has a "complex past medical history of degenerative C-spine, history of chronic hepatitis C, hepatitis B, bipolar disorder with clustered headaches, . . . degenerative C-spine with frequent severe headaches, which impair concentration. . . and sleep." [Tr. 471]. The doctor noted that plaintiff is prescribed Seroquel, Celexa, Lamictal, Inderal, Zanaflex, and Symbicort. He opined that because of pain, problems lifting, maneuvering, and inability to perform other requirements of her job, she would no longer be able to maintain employment. [Tr. 471]. He opined that plaintiff's degree of pain is frequently debilitating, as is true of her complaints of fatigue; she has fair ability to deal with the stress of a typically low stress job; that she suffers from lethargy and lack of alertness; that she has depression, irritability and short attention span; that she would be absent from her job about twice a month for her impairments; and that her impairments of migraine headaches, chronic fatigue, and hepatitis B and C would further cause her difficulty in working on a sustained basis.

While it is outside of the province of a treating physician to make a legal determination regarding a claimant's ability to work, in this case the ALJ appears to have completely ignored the diagnosis of degenerative disc disease, headaches, and related limitations from these condition. In fact, he ignored the opinion of Dr. Buie altogether. Therefore, the Court concludes that the ALJ erred in not finding that plaintiff's degenerative disease and headaches were severe impairments.

After a full review of the record and the ALJ's decision, the Court finds that there is not substantial evidence in the record as a whole to support the ALJ's decision to find that plaintiff did not suffer from severe mental and physical impairments, which are supported by the record. It was error to discount the opinions of both Dr. Buie and Dr. Young. It is clear that both Dr. Buie and Dr. Young had a long-standing treatment relationship with plaintiff. 20 C.F.R. § 404.1527(d)(2)(i); <u>Shontos v. Barnhart,</u> 328 F.3d 418 (8th Cir. 2003). Their opinions are otherwise supported by other medical opinions in the record, diagnostic tests, and plaintiff's own testimony.

Based on the record before it, the Court finds that the ALJ's decision is not supported by substantial evidence in the record. There is not substantial evidence in the record as a whole to support the ALJ's decision to disregard the opinions of treating physicians, and to conclude that plaintiff does not suffer from a combination of mental and physical impairments that render her disabled.

Accordingly, the decision of the Secretary should be reversed.

It is hereby

ORDERED that plaintiff's motion for judgment on the pleadings be, and it is hereby, granted. It is further

ORDERED that, pursuant to 42 U.S.C. Section 405(g), this matter be remanded to the Commissioner for the calculation and award of benefits.

/s/ James C. England
JAMES C. ENGLAND
United States Magistrate Judge

Date:   8/26/11